## In re SMITH'S ESTATE.

(Supreme Court, Appellate Division, Second Department. December 30,. 1909.)·

1. EXECUTORS AND ADMINISTRATORS (§§ 473, · 474*)—ACCOUNTING—PARTY IN INTEREST.

   ·Where a widow, who acted as ·administratrix of her deceased husband,. who died leaving as his only relatives the widow, his father and mother, and sisters and a brother, sought to defeat the petition of the father for a compulsory accounting by showing birth of a posthumous child, ·she had the burden of proving that she gave birth to a child born alive.

   [Ed. Note.—For other cases, see Executors and Administrators, Dec.. Dig. §§ 473, 474.*]

2. EXECUTORS AND ADMINISTRATORS (§§ 473, 474*)—ACCOUNTING—PARTY IN INTEREST.

   Evidence *held* not to show that a posthumous child of a decedent was· born alive, so as to preclude decedent's father from being a next of kin.

   [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. §§ 473, 474.*]

Appeal from Surrogate's Court, Kings County.

In the matter of the estate of Edward A. Smith, deceased. From· a decree dismissing the petition of Edward R. Smith for a compulsory accounting by the administratrix of the deceased, the petitioner ap-- peals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

William F. Connell, for appellant.
Nicholas Dietz, for respondent.

RICH, J. This appeal is from a decree of the Surrogate's Court of· Kings county dismissing the petition for a compulsory accounting by the respondent as the administratrix of the estate of her first husband, who died leaving as his only relatives the respondent, his widow, his father, his mother, two sisters, and a brother. ˙ Eight months after the death of respondent's husband she gave birth to a posthumous child,. and the learned surrogate has dismissed the father's petition for an ac- counting upon the ground that he was not a next of kin of the decedent,. and not an interested party to the proceeding. This finding was based upon the conclusion that the child was born alive, and upon this ap- peal we are only concerned with the consideration ·of the question as. to the ·correctness of this conclusion. The burden of proving that the respondent gave birth to a child having life was upon her (Bender v.. Terwilliger, 48 App. Div. 371),[1] and I am unable to find that the evi- dence· preponderates in favor of her contention. Upon the contrary, I believe the circumstances point unmistakably to the fact that the child was not born alive. Upon the hearing before the surrogate, the only persons called who could have any knowledge upon the subject, beside· the respondent, was the nurse and the attending physician. The doctor testified that the delivery was abnormal, attended with difficulty, and that the patient required his constant attention. He said that about two hours before the child was born he applied a stethoscope to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.
[1] 63 N. Y. Supp. 269.

abdominal walls of the mother and detected the beating of the fœtal heart; but it is not claimed that he saw or observed any other indication of life. In speaking of the occurrence after the delivery, he said:

"I quickly detached the cord from the after-birth and passed the child, who was limp and pale, and who had not emitted any cry or motion, to the nurse. I might say that I had not seen any motion; but I handed the child to the nurse, with instruction to do what she could for the child, because I felt that there might be life, even though it was an abnormal delivery."

The nurse testified that, as the doctor let go of the child's legs in handing it to her, she noticed that its two feet gave a kick or twitch, and this is the only fact upon which the finding of the learned surrogate could have been predicated. We are concerned upon this appeal as to whether this evidence was sufficient to support the finding, and in considering this we must take into consideration all of the facts and circumstances.

In the first place, after taking the child from the doctor, the nurse passed it on into the hands of a relative without giving any attention, and went to a neighboring drug store to obtain medicine for the doctor, notwithstanding there were other persons in the house at the time who might have gone upon this errand, and I cannot reconcile her conduct with the conclusion that the child was alive, or that she even entertained the belief that it was. She exhibited the dead body to the mother during the day, but neglected to mention what she had observed. This omission may have been excusable; but she was likewise reticent in failing to mention it to the doctor. She abandoned the child without care, and did not mention that she had observed any evidence of life to any one until the respondent called upon her and informed her that "upon the question of the life or death of the child and the delivery hung the right to the estate," when for the first time she told that she had observed the movement of the child's legs. The relative into whose hands the child was delivered by the nurse was not called as a witness, and her absence is unexplained. There is no evidence of any crying, change of color, independent breathing, or that the child made any manifestation of life, except this kick, which may have been due to a relaxation of a contracted muscle, or it may have been imaginary.

A careful examination of the record leads to the conclusion that the respondent has failed to establish by a preponderance of evidence that a live child was born to her, and the decree of the Surrogate's Court must therefore be reversed, with costs to the appellant payable out of the estate, and the proceedings remitted to the Surrogate's Court for final disposition and an accounting. All concur.